**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**


**IN RE DIGITEK®**
    **PRODUCTS LIABILITY LITIGATION**              **MDL NO. 1968**
_____

**THIS ACTION RELATES TO:**

Campbell v. Actavis, 2:08-cv-01075;
Chambers v. Actavis Totowa, LLC, 2:08-cv-01175;
Konek v. Actavis, Inc., 2:08-cv-1053;
Lange v. Actavis Totowa, LLC, 2:09-cv-00448;
Wilburn v. Actavis Group hf, 2:08-cv-01017;
York v. Actavis Totowa, LLC, 2:09-cv-00544

_____


**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
RECONSIDERATION OF PRETRIAL ORDER #60
(ORDER DENYING CLASS CERTIFICATION)**

On May 25, 2010, the Court entered Pretrial Order #60, Memorandum Opinion and Order

re Motion for Class Certification (Docket No. 355), denying Plaintiffs' request that the Court

certify a nationwide class consisting of:

> All persons residing within the United States who purchased Digitek® pursuant to
> prescription, during the time period when the Recalled Digitek® was manufactured,
> produced, distributed, sold or otherwise supplied, who suffered economic losses, included,
> but not limited to, payments for Recalled Digitek®, out-of-pocket expenses for
> diagnostic testing, medical testing, medical visits, and/or new prescriptions, as a result of
> having received Recalled Digitek®.

The Court also denied Plaintiffs' alternative request to certify four individual state-only classes

for the states of New Jersey, Kansas, West Virginia and Kentucky, respectively.  It appears to

Plaintiffs that the Court refused to certify any classes – nationwide or state – after misconstruing

the nature and extent of the economic losses actually claimed by Plaintiffs on their own behalf

and on behalf of the class.  Based upon anecdotal evidence highlighted by Defendants, including that from individuals who are no longer a part of this litigation, the Court erroneously concluded that typicality and predominance are lacking.  In actuality, no Plaintiff claims such losses and the fact that some putative class members might does not obviate class certification.

For this reason and for the other reasons detailed in this memorandum, Plaintiffs respectfully request this Court to reconsider its denial of their class certification motions.  If the Court is not inclined to reverse course and certify either a national class or any single state-only classes, however, then Plaintiffs would request this Court instead reconsider the timing of its class certification decision and, to assist in the administration of the overall MDL proceeding and ensure a fair evaluation of the propriety of class certification, vacate Pretrial Order #60 and postpone further consideration of class certification until some point after the current bellwether trials have been completed.

## SUMMARY OF ARGUMENT

Plaintiffs believe that the application of New Jersey law to support nationwide class certification is appropriate and that the Court's choice of law analysis did not fully consider the District Court of New Jersey's opinion *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55, 75 (D.N.J. 2009).  Nevertheless, even assuming, *arguendo*, that a nationwide class cannot be certified due to 50-state choice of law complexities, the Court's choice of law analysis confirms that the four state-only classes Plaintiffs requested can be certified under Rule 23.  In addition, the Court unjustifiably found that Plaintiffs' motion failed the predominance prong of Rule 23(b) where many of the concerns raised by the Court were merely hypothetical or could easily be dealt with through the claims administration process.  Specifically, as stated above, the Court seized upon a few outrageous damages requests to find that individual damages issues

2

would preclude a finding of predominance under Rule 23(b).  None of the items cited by the Court have actually been requested in the present class litigation, however, and the claims administration process could easily reject such ludicrous claims should any potential class member attempt to make one.  The Court noted that the proposed class would include individuals who had already received a refund under the Stericycle Program, but the claims administration process could take participation in that program into account.  The Court perceived there to be problems surrounding product identification, but that, again, could be dealt with during the claims administration process.  Finally, in ruling on Plaintiffs' motion now, as opposed to after bellwether trials, the Court has unnecessarily rushed the class certification decision-making process when better information will be available soon after the Court holds bellwether trials.  By prematurely bringing class certification issues to fore, the Court has potentially imperiled the ability of thousands of class members to participate in any settlement due to the loss of *American Pipe* tolling.  For all of these reasons, Plaintiffs request the Court to reconsider Pretrial Order #60 and certify a national class or, alternatively, the four state-only classes requested in Plaintiffs' Motion for Class Certification.  Failing that, Plaintiffs request the Court to vacate Pretrial Order #60 and postpone the class certification decision until after bellwether trials can be completed.

## ARGUMENT

Plaintiffs believe the Court misapprehended or did not fully consider a number of matters critical to Plaintiffs' motions for class certification.  Specifically, Plaintiffs believe the Court misunderstood the types of economic damages for which Plaintiffs seek to recover on behalf of themselves and class members.  Plaintiffs also believe the Court found problems with the predominance and superiority prongs of Federal Rule of Civil Procedure 23(b)(3) based upon unwarranted factual conclusions and perceived problems that easily can be dealt with through the

claims administration process. Under the Court's own choice of law analysis and with a proper understanding of the scope of the relief sought, the Court's concerns regarding individualized issues are ameliorated and certification of a nationwide class, or **at least** the four individual state-only classes requested by Plaintiffs is warranted and appropriate under Federal Rule of Civil Procedure 23.

As a preliminary matter, Plaintiffs believe that the application of New Jersey law to support nationwide class certification is appropriate and that the Court's choice of law analysis did not fully consider the District Court of New Jersey's opinion *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55, 75 (D.N.J. 2009). *Mercedes-Benz Tele Aid* illustrates that New Jersey's law can be used appropriately to support a national class.[1] Under the facts of the present case, it is defensible and appropriate under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) and its progeny for this Court to apply New Jersey law to the claims of all putative class members regardless of their state of residence. However, even accepting, *arguendo*, the Court's choice of law analysis, it would still be appropriate to certify state-wide classes.

Under the choice of law analysis outlined by the Court in Pretrial Order #60, the certification of the four state-only classes requested by Plaintiffs requires only the application of each of the four state's laws. As the Court recognized in its analysis of New Jersey choice of law

---

[1]   Indeed, from a policy perspective, the primary thrust of choice of law rules are to ensure that a particular state's residents are given the full protection of that state's laws whenever constitutionally permissible. So, hypothetically speaking, if a New Jersey resident is injured in New Jersey, but a putative class action is brought on that resident's behalf utilizing Kansas law, New Jersey's interest is in ensuring that its own resident is given at least the same level of "protection" that its law would provide. If applying Kansas law would result in the New Jersey resident receiving even more "protection" than provided under New Jersey law, then New Jersey's interests in seeing the rights of its residents vindicated is fully satisfied, even if its own laws are not applied. Here, there is no indication that New Jersey's laws provide any less "protection" to consumers than any other state's laws; and if anything, New Jersey's consumer protection law is more "pro-consumer" than most, and as such, applying New Jersey law to vindicate the rights of consumers nationwide does not run afoul of Constitutional guideposts.

principles, "[t]he state in which each claimant was injured has an overriding interest in having its laws applied to redress any wrong done." Order at 18. The Court reached the same conclusion in Pretrial Order #60 under the choice of law analysis for the other three jurisdictions at issue: Kansas, West Virginia and Kentucky. Order at 20-25. Thus, for a class composed of individuals who are residents of New Jersey, this Court need only apply New Jersey law to their claims. Similarly, for a class composed of individuals who are residents of Kansas, this Court need only apply Kansas law to their claims, and so on for the other two states. While this result could admittedly cause manageability concerns if extrapolated to all fifty states, at present the Court is faced only with analyzing the laws of four states – a task an MDL transferee court is well equipped to handle.[2]

Under this straightforward choice of law analysis, one of the concerns the Court expressed regarding typicality of the class representatives falls to the wayside. Class representatives who are residents of New Jersey will not be attempting to vindicate claims on behalf of individuals residing in California, for example, in a New Jersey-only class comprised of New Jersey residents. In that instance, New Jersey class representatives will be representing only New Jersey residents. The same applies for the three other state-only classes Plaintiffs have requested the Court certify.

---

[2] Defendants have complained that Plaintiffs' purported class definitions for state-only classes inappropriately includes individuals who are currently residents of a particular state but were residents of some other state at the time that particular individual suffered harm. While theoretically true, Plaintiffs do not believe this level of precision is required in their class definition as the potential number of individuals falling into the category is quite low in comparison to the total number of class members in each state-only class. Nevertheless, should the Court disagree and believe a particular state's interests in seeing its own law applied demands such exactitude, then the class definition can simply be revised to apply only to residents of a particular state "as of the time of the Recall." As discussed elsewhere, limiting the class in this fashion can be implemented during the claims administration process.

The Court's other concern regarding typicality appears to be based upon a misapprehension of the relief Plaintiffs seek that arises in the Court's analysis of predominance and superiority, as well.  Specifically, the Court found that the variance in what the class representatives testified their damages were during deposition meant that their claims were atypical of each other and emblematic of the wide variety of claims the Court would be required to adjudicate on a class basis.  Order at 28.

In actuality, none of the Class Representatives has requested the Court to provide them compensation for any of the anecdotal items highlighted by Defendants and the Court – gas money, eyeglasses, trip insurance, or even enemas.[3]

What the Class Representatives have requested the Court to do is certify a class consisting of individuals who have suffered economic injuries such as "payments for Recalled Digitek®, out-of-pocket expenses for diagnostic testing, medical testing, medical visits, and/or new prescriptions, as a result of having received Recalled Digitek®."  While the Court notes that Plaintiffs' proposed class definition could encompass such damages, that fact does not mean that Plaintiffs have actually requested them.  Class representatives "need not be legal scholars" and, as Plaintiffs indicated in their reply brief, many of the class representatives here are unsophisticated.  *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 164 (N.D. Tex.2010) (quoting *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 483 (5th Cir. 2001)).  Accordingly, the fact that some of the class representatives may have unrealistic expectations about what kinds of damages can be recovered from a class action does not render them inadequate or their claims atypical.  As Plaintiffs made clear in their briefing, none of the class representatives, under

_____

[3] A former plaintiff anecdotally mentioned some of those expenses in addition to his payments for the Recalled Digitek.  However, he dismissed his claims before the class motion and has not been a plaintiff or involved in the litigation since last year, as Defendants knew.

6

guidance of counsel, has requested the Court to certify a class that would allow them to recover for eyeglasses and the like.  The point of Plaintiffs' class definition is to ensure that the class includes individuals who have suffered actual, identifiable economic losses, but leave the specific types of economic losses the Court will allow to be recovered to be determined by the Court itself during the damages phase of trial.  From that point, the parties can then build into the claims administration process the procedures necessary to ensure class members recover only the types of damages the Court has found to be appropriate.  If the Court is uncomfortable with the potential scope of the class as defined, the more sensible course of action is for it to explicitly limit the class to individuals who suffered specific kinds of economic damages rather than to deny class certification wholesale.

The Court's other concerns regarding predominance each can be effectively dealt with during the claims administration process, as well.  The Court noted that the proposed class would include individuals who had already received a refund under the Stericycle Program.  Yet, Defendants know from the records of the Stericycle program each person who has received refunds already, and a claims administrator can offset any claimed damages by the value of any replacement Digitek® any class member may have received as a part of the Stericycle program. As Plaintiffs argued extensively in their briefing, the extent to which participation the Stericycle refund program may have ameliorated someone's losses is a damages question and does not render class certification inappropriate.  *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 427-28 (4th Cir. 2003) (recognizing that Rule 23 "explicitly envisions class actions with … individualized damage determinations."); *Brown v. Cameron-Brown Co*., 92 F.R.D. 32, 46 (E.D. Va. 1981) (predominance satisfied even without common damages methodology where violation and impact elements were susceptible to common proof).  *See also Smilow v. Southwestern Bell*

*Mobile Sys., Inc*., 323 F.3d 32, 40 (1st Cir. 2003) (citing *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 139 (2d Cir. 2001)) ("Where [] common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.") (*superseded by statute on other grounds)*; *Bogosian v. Gulf Oil Corp*., 561 F.2d 434, 456 (3d Cir. 1977); *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 798 (10th Cir. 1970); 5 James Wm. Moore, Moore's Federal Practice § 23.46[2][a], at 23-208 & n. 11 (3d ed. 1997 & Supp. 2006) (collecting additional cases); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.")).

In Pretrial Order #60, the Court also found that Plaintiffs had failed to establish predominance because the Court perceived there to be problems surrounding product identification.  Again, this concern can be dealt with during the claims administration process. As a part of submitting a claim, the onus can be put on a particular class member to provide pharmacy or medical records to show product purchase and use such as was done in the "Fen-Phen" diet drug litigation or in the Vioxx litigation.

The Court also appeared to misapprehend that certifying a class would require it to somehow take into account what benefits putative class members received from the recalled Digitek.  As detailed in Plaintiffs' briefing, Plaintiffs seek only economic injuries that are a direct consequence of Defendants' recall.  Plaintiffs do not seek compensation for pills that were ingested without incident; rather, they seek recompense for the costs of having to obtain a replacement prescription, having to consult with a medical provider, and other out of pocket losses.  Thus, there is no need for this Court to inquire into whether any particular class member

received benefits from recalled Digitek or determine whether any particular plaintiff or class member suffered any physical symptoms from ingesting the drug.

For these reasons, there is no impediment under Rule 23 to this Court certifying the four state-only classes, or even the nationwide class, that Plaintiffs have requested in their motion for class certification.  Plaintiffs request that the Court reconsider its predominance analysis, particularly with respect to these four state-only classes and enter an order certifying the nationwide class or at least those four state-only classes.

Finally, the Court expressed serious concerns about the superiority of the class device given the timing of the class certification motion.  On page 35 of Pretrial Order #60, the Court states:

> Both I and my distinguished state judicial colleagues have taken great care, with the assistance of the respective Steering Committees, to track this MDL and the state proceedings for a speedy, just and efficient resolution. Daubert and similar hearings are scheduled. Bellwether plaintiffs have been selected. Trial dates are set in the coming months. Adding a complex certified class to these already complicated state and federal proceedings makes little sense. It might derail the good case management efforts already undertaken. For instance, the plaintiffs place much emphasis on resolving common issues relating to defendants' fault. From a practical perspective, defendants' fault is being litigated aggressively already within this MDL.  Duplication of effort costs money and wastes resources.

The Court goes on to conclude that "a certification order at this critical time promises to derail the management efforts and resources devoted to more substantial issues in the case." Order at 36.  While Rule 23 does mandate that the question of class certification be resolved as soon as practicable, it does not require an MDL court to rush class certification issues to the forefront if doing so does not make sense from the standpoint of the overall administration of the case. Plaintiffs' counsel have consistently requested the Court postpone consideration of class issues until the MDL proceedings were more advanced.  And the class certification motion was made within the time period set by the Court for the filing of the motion.  As the Court notes in Pretrial

Order #60, discovery is continuing, expert witness issues are still being resolved, and bellwether trials are scheduled.  All of these items will have a bearing on the class certification analysis – not the other way around – and as such, it is premature in this litigation for the Court to consider the motion for class certification.  As additional discovery unfolds, expert's opinions are vetted, and bellwether trials conducted in the personal injury cases, common factual and legal issues will come to light that will undoubtedly impact that Court's Rule 23 analysis.

Indeed, in its order denying class certification, the Court expurgated Plaintiffs' list of potential common issues and facts.  Within the next few months of litigation, the Court and parties will know what, if any, common issues arise during the bellwether trial process.  While there is not a complete overlap between the issues relevant in the personal injury bellwether trials currently scheduled and the economic injury-only cases involved in class action, Plaintiffs are certain that the bellwether trial process will illuminate a number of issues that will be common to all Digitek® cases, including those falling within the purported class action for economic injuries. Waiting until these issues are known would allow this Court to engage in a more fair and sensible analysis of class certification rather than prematurely rejecting the class device in this case when the Court must evaluate the propriety of class certification based upon conjecture as to common issues that may arise in the trial process.

An even more pressing concern arises regarding the timing of the Court's order on the motion for class certification.  Plaintiffs believe the Court has overlooked the *American Pipe* tolling issues that stem from the Court's denial of class certification at this point.  As a practical matter, the Court's denial of class certification is the "death knell" for class members' claims. The dollar amounts at issue are simply too small to justify any individual class member's pursuit of relief from the Court in the absence of a class action.  Nevertheless, the Court's denial of class

certification will require class members in states recognizing *American Pipe* tolling to evaluate the merits of their individual claims immediately well before the underlying MDL proceedings have advanced enough to allow those class members to make an informed judgment regarding the value of his or her claim. To the extent there are individuals wanting to pursue their economic loss claims, the Court's entry of an order denying class certification now unfairly prejudices them.

Indeed, at the end of Pretrial Order #60, the Court indicated in a footnote that it was denying the present motion for class certification without prejudice to reconsidering a motion brought in the context of settlement under Rule 23(e). The practical difficulty with that approach, however, is that if the litigation proceeds for a significant period of time before settlement negotiations bear fruit, the effect of the Court's present order could be to have unfairly excluded from the litigation potentially thousands of individuals whose claims have expired in the interim because they could no longer reap the benefits of *American Pipe* tolling. This issue is not necessarily resolved by the Plaintiffs taking an interlocutory appeal of the Court's class certification denial under Federal Rule of Civil Procedure 23, as at least one Circuit Court has held that an appeal of an order denying class certification does not preserve *American Pipe* tolling. *See Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374 (11th Cir. 1998). This opinion was issued prior to Rule 23(f) which explicitly permits interlocutory appeals of class certification denials, so its continued vitality may be in doubt. *See The National Asbestos Workers Medical Fund v. Philip Morris*, 2000 WL 1424931, at *1 (E.D.N.Y. Sept. 26, 2000). Nonetheless, the Eastern District of New York issued a stay of further proceedings in order to ensure that class members claims were not extinguished during the pendency of a Rule 23(f) interlocutory appeal. *Id.*

From a purely administrative point of view, Plaintiffs believe the time for the Court to express its views regarding the viability of a class action is not now – that time will come after the underlying MDL proceedings have progressed further, giving the Court a better perspective on the presence of common factual and legal issues and allowing the parties to engaged in settlement negotiations without potentially excluding thousands of class members from participating.  Accordingly, if the Court is not inclined to certify either the nationwide class or the four state-only classes as requested by Plaintiffs, then Plaintiffs urge this Court to vacate its present order denying class certification and instead keep the matter of class certification under advisement.   By "kicking the can down the road" a bit and allowing this litigation to ripen, the Court can make its class certification decision based upon better knowledge, not conjecture, and can ensure that as many potentially harmed individuals as possible are provided relief should there ever be a class settlement proposal presented to the Court under Rule 23(e).

## CONCLUSION

For the foregoing reasons, Plaintiffs request the Court to reconsider Pretrial Order #60, certify a national class or, alternatively, four state-only classes as requested in Plaintiffs' Motion for Class Certification.  Failing that, Plaintiffs request the Court to vacate Pretrial Order #60 and postpone the class certification decision until after bellwether trials can be completed in the MDL proceedings.

Dated June 8, 2010.

Respectfully submitted,

s/Fred Thompson, III Esq.
Fred Thompson, III, Esq.
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Attorney for Plaintiff William E. Lange

12

*Co-Lead Counsel*

Carl N. Frankovitch, Esq.
**Frankovitch, Anetakis, Colantonio & Simon**
337 Penco Road
Weirton, WV 26062

*Co- Lead Counsel*

Harry F. Bell, Jr., Esq.
**The Bell Law Firm PLLC**
P. O. Box 1723
Charleston, WV 25326

*Co-Lead and Liaison Counsel*

**Wolf Popper LLP**
845 Third Avenue
New York, NY  10022
(212) 759-4600

**Morgan and Morgan, P.A.**
One Tampa City Center
7th Floor
Tampa, FL 33602
813.223.5505 (main)

**Malkinson & Halpern, P.C.**
208 S. LaSalle Street, Suite 1750
Chicago, IL 60604
(312) 427-9600 (phone)

**Hutton and Hutton Law Firm LLC**
P.O.B. 638
Wichita, KS  67201-0638
316.688.1166/686.1077 (f)

**Locks Law Firm LLC**
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002
(856) 663-8200

13

**Bahe Cook Cantley & Jones PLC**
Kentucky Home Life Building
239 South Fifth Street, Suite 700
Louisville, Kentucky 40202
Phone: (502) 587-2002
Facsimile: (502) 587-2006

**Proposed Class Counsel**

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2010, I electronically filed the foregoing Memorandum in Support of Plaintiffs' Motion for Reconsideration with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/Fred Thompson, III Esq._____
Fred Thompson, III, Esq.
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
***Attorney for Plaintiff William Lange***
***Co- Lead Counsel***
